PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CLAUDINE G. MANLEY, | ) | CASE NO. 1:08CV0664 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | JUDGE ECONOMUS |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

## I.  Introduction

Plaintiff Claudine G. Manley sought judicial review of the Social Security Administration's (also "Agency" or "Commissioner") final decision denying her application for a period of disability and Disability Insurance Benefits ("DIB").  The matter was referred to the undersigned Magistrate Judge for the submission of a Report and Recommendation.  The undersigned recommends that the decision denying benefits be reversed and the matter remanded for further proceedings consistent with this opinion pursuant to the Fourth Sentence of 42 U.S.C. § 405(g).

## II.  Overview

At the time of the Agency's final denial, Manley was 41 years old with a high school education and one year of college without the completion of any courses.  (Tr. 259, 298.)  It is largely undisputed that Manley has a long history of work experience, mental health issues and

back problems.

Her past relevant work includes being a bank teller, fast food worker, care giver and machine operator.  Manley initially injured her back while working as a machine operator.  (Tr. 93, 97.)  Despite her condition worsening after the birth of her daughter, she continued working as a cashier and machine operator.  (Tr. 100.)  Following weeks of pain in her lower back and bilateral extremities, Manley underwent a microdisectomy in 1999, where a chip was removed from a disc, a disc was removed, and four rods, a plate and bone were implanted.  (Tr. 82, 140.)  The following year, Manley's back went out when she bent over to put on her shoes.  (Tr. 142.)  The symptoms, including chronic back pain, back spasms, poor sleep related to back pain and discomfort at the site of previous surgeries.  (Tr. 22-23, 142.)  Manley did not cease working until her discs collapsed in March 2003 and she "couldn't get dressed or walk well enough to work."  (Tr. 102, 256, 286.)

The record also documents a history of mental limitations, "ADHD", alcohol abuse, post traumatic stress disorder and severe depressive disorder.  (Tr. 22, 306.)

When Manley filed for disability, she was living with her boyfriend whom she later married in May of 2004.  (Tr. 40, 260.)  Manley alleged back pain, fibromyalgia and depression in her September 18, 2003 request for reconsideration.[1]  (Tr. 53.)

Despite Manley's history of back surgeries, pain, and longstanding mental impairments the Administrative Law Judge ("ALJ") found that Manley's severe impairment and limitations would allow her to return to past work as a teller or perform other jobs in the national economy.

---

[1]  Neither party raised a specific issue regarding fibromyalgia, but Manley reports having the impairment and there is evidence of the impairment in the medical records.  (Tr. 199, 201, 216, 219, 270, 276.)

(Tr. 29-30.)  The ALJ opined that "the claimant retains the residual functional capacity to lift up to 20 pounds maximum with frequent lifting or carrying of objects weighing up to 10 pounds with the ability to sit, stand, and walk for 6 hours in an 8 hour day but with a limitation to the performance of low stress work with no production quotas and no high pace."  (Tr. 29.)  Thus, the ALJ found that Manley is not disabled and denied her benefits.

### III.  Procedural History

Manley filed an application for a period of disability and DIB on December 18, 2002, alleging a disability with an onset date of December 16, 2001.  (Tr. 21.)   Benefits were denied initially and on reconsideration.  (Tr. 21.)  The claimant requested a hearing and again benefits were denied.  (Tr. 21.)  The Appeals Council vacated the hearing decision and remanded the case, on June 6, 2006, indicating that the ALJ should obtain additional evidence and further evaluate the claimant's impairments.  (Tr. 21-22.)   On October 17, 2006, a supplemental hearing was held during which Manley and Vocational and Medical Experts testified.  (Tr. 22.) On November 7, 2006, the ALJ issued another unfavorable decision.  (Tr. 20-30.)   The Appeals Council denied Manley's request for review, rendering the November 2006 denial the final Agency decision and subject to judicial review pursuant to 42 U.S.C. § 405(g).  (Tr. 6-8.) Manley timely filed a complaint with this Court, specifically presenting the following assignments of error:

> (1) Whether the Administrative Law Judge ("ALJ") adequately reviewed the case record [sic] used a correct legal standard resulting in a decision that was supported by substantial evidence.
>
> (2) Whether the ALJ failed to comply with the directives of the Appeals Council Orders of June 6, 2006.

3

ECF No. 8 at 1.

### III.  Standard of Review

#### A.  Five Step Sequential Analysis

The ALJ must follow a five-step sequential analysis in order to determine whether a claimant is disabled.  At Step One, the ALJ considers the claimant's work activity.  A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for a profit.  At Step Two, the ALJ considers the medical severity of the claimant's impairments.  A claimant is not disabled if he or she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R § 404.1509, or a combination of impairments that is severe and meets the duration requirement.  At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement.[2]  A claimant is disabled if he or she has an impairment that meets the listing and duration requirement.  Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work.  A claimant is not disabled if he can perform past relevant work.  At the final step, Step Five, the ALJ considers the claimant's RFC and his age, education, and work experience to determine whether the claimant may work.  A claimant is disabled if he or she is unable to work.  *See* 20 C.F.R. § 404.1509(a)(4).

---

[2]  *See e.g.*, 20 C.F.R. Part 404, Subpart P, Appendix 1.

4

**B.  Judicial Review of a Final Agency Decision**

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).  Furthermore, judicial review of the ALJ's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Id*.  The Court must review the findings of the ALJ consistent with the above deferential standards.

### IV.  Law and Analysis

**A.  Jurisdiction over Issues of Agency Compliance with Appeals Council Directives**

Manley alleges that the ALJ failed to comply with specific directives of the Appeals Council during the course of an administrative review.  Specifically, Manley contends that the ALJ failed to: (1) consider the opinion of Dr. Winter pursuant to the requirement of 20 C.F.R. § 404.1527(f) and Social Security Ruling 96-6p, and to explain the weight given to such opinion evidence; (2) obtain evidence from a medical expert; and (3) evaluate the subjective

5

complaints of Manley in accordance with the requirements contained in Social Security

Ruling 96-7p. *See* ECF No. 8 at 1.  Neither party addresses the preliminary question of

whether the Court has jurisdiction to review the claim.  Nevertheless, Manley's appeal on this

issue is inappropriate because she requests that the Court review an internal agency matter

over which the Court lacks jurisdiction.

     Federal courts are courts of limited jurisdiction and the existence of subject matter

jurisdiction may be raised at any time, on a party's motion or *sua sponte* by the court. *Brown*

*v. Comm'r of Soc. Sec.*, No. 1:08CV183, 2009 WL 465708 (W.D.Mich Feb. 24, 2009).

Judicial review of Social Security decisions is clearly limited to the "final decision" of the

agency in 42 U.S.C. § 405(g).  Although "final decision" is not defined in the statute, the

regulations provide a four step procedure for administrative review before the claimant may

request judicial review by filing an action in federal district court.[3] *Brown*, 2009 WL 465708

at *5.  Agency regulations require ALJs to follow the Appeals Council orders and allow ALJs

to take additional actions unless they are inconsistent with the Appeals Council remand orders.

*See Brown*, 2009 WL 465708 at *6.  The issue of whether an ALJ complies with an Appeals

Council's order of remand is an internal agency matter which arises prior to the issuance of

the Agency's final decision. *Id*.

     The Appeals Council implicitly found the ALJ's review was in compliance with its

prior instructions by declining to disturb the ALJ's most recent decision to deny Manley

benefits.  *See Garmon v. Astrue,* No.1:08CV171-J, 2009 WL 1506704, at *7 (W.D.Ky. May

---

[3]  These steps include: (1) initial determination (2) reconsideration (3) hearing before an administrative law judge (4) Appeals Council Review.

28, 2009) (Appeals Council implicitly found that the ALJ adequately complied with its prior instructions). Section 405(g) does not provide the Court with authority to review intermediate agency decisions that occur during the administrative review process. Accordingly, the Court is without jurisdiction to rule on whether the ALJ complied with specific provisions of the Appeals Council's remand order.

**B. Credibility Determination**

It is not the function of a reviewing court to determine the credibility of the claimant. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed.Appx. 393, 395 (6th Cir. 2004) (*citing Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

When an individual alleges disabling symptoms, 20 C.F.R. § 404.1529 requires the ALJ to follow an outlined process for evaluating these symptoms. First, the ALJ must determine whether objective medical evidence supports the claimant's allegations regarding the disabling effects of the impairment. *Id*. If the ALJ finds that the objective medical evidence does not support the claimant's allegations, the ALJ may not simply reject the claimant's statements, but must consider them in light of the entire record. *Id*. In assessing the credibility of statements, the ALJ must look to the relevant evidence in the record. *See* SSR 96-7p. In addition to the medical evidence, the ALJ should consider seven factors, as

7

they may be relevant to a particular claim.[4]  The ALJ need not analyze all seven factors, but should make clear that he considered the relevant evidence.  *See Cross v. Comm'r of Soc. Sec., 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)*.

The consistency of the various pieces of information contained in the record should be scrutinized.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007). Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.  *Id*.  The credibility determination must contain specific reasons for the finding, "supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight."  *See* SSR 96-7p; *Cross*, 373 F.Supp.2d at 733.

Additionally, SSR 96-7p reads, "the finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  In *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), the Sixth Circuit made it clear that the ALJ cannot merely recount the medical

---

[4]  The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p.

evidence and claimant's daily activities and then without analysis summarily conclude that the testimony lacked credibility.

### 1. The ALJ Made an Incomplete Review of the Record

In the instant matter, the ALJ properly set forth the relevant two-step process provided for evaluating symptoms in SSR 96-7p.  (Tr. 26.)  The ALJ, however, did not follow both steps.  The ALJ implicitly and properly conceded that Manley met the requirement of an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptom, the first step.[5]  The ALJ identified the second step but failed to apply that step to the evidence in Manley's case.  SSR 96-7 describes the second step as follows:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  This includes the medical signs and laboratory findings, the individual's own statements

---

[5]  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)–*i.e.*, an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities." SSR 96-7p.

about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4).  These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

The ALJ's finding that Manley's testimony was inconsistent and ultimately not credible stems from his failure to consider the record in its entirety; specifically, the ALJ failed to properly consider the seven factors used to assess subjective complaints of pain.

### a) Daily Activities

The ALJ opined that Manley's allegations were not credible because the record documented that she was "fairly active" despite her allegations of total disability.  (Tr. 25.) The ALJ took several examples out of context to find Manley's testimony contradictory. *Felisky,* 35 F.3d at 1039 (noting an ALJ misconstrued an internally consistent testimony by taking it out of context).  Although the ALJ found Manley active because she "got up by 4:15 in the morning in order to pack her boyfriends lunch," the record as a whole demonstrated Manley had sleep problems, was often awake from pain and the food she prepared was merely microwave meals or sandwiches.  (Tr. 25, 200.)  Likewise, the ALJ stated Manley "did yoga, drove, had friends, and occasionally saw movies."  (Tr. 25.)  In reality, Manley performed some stretching exercises at the advice of her spine doctor, reported having few friends and drove only for short distances – an averment supported by the fact she did not driver herself to either court appearance.  (Tr. 100, 200, 287, 313.)

10

The ALJ agreed that Manley's part-time employment was not substantial gainful activity (*i.e.*, profitable work).  He, nevertheless, found the fact of her part-time employment to be incongruous with her complaints and injurious to her credibility.

In 2006, Manley worked two days a week from two to eight hours a day for a few months, yet the record does not illuminate the extent or effects of the work Manley performed or any assistance or accommodations her employer provided.  (Tr. 27-28.)  Manley testified that her friend allowed her to work and that she spread out the days due to soreness.  (Tr. 314.) Her responsibilities were limited; sometimes she waited on tables, processed register transactions or would take a plate or two to a table "and then sit down and wait until they're done and take up their plate."  ( Tr. 314.)  Manley's limited responsibilities performed for a friend, for a few months in 2006, should not undermine her credibility for a disability alleged since 2001.  Alternatively, Manley's persistent attempts to find suitable employment after submitting several applications and facing constant rejection should bolster her credibility as someone who would not unnecessarily claim disability, especially when paired with her extensive work history.  (Tr. 313.)  *See White v. Comm'r of Soc. Sec.*, No. 08-1586, 2009 WL 454916 at *9 (6th Cir. Feb. 24, 2009)  (extensive work history and attempts to continue working despite disability support credibility); *see also Felisky,* 35 F.3d at 1041 ( noting that a 17 year work history supports credibility).

The ALJ's opinion of Manley's credibility is a misrepresentation of the facts analogous to *Rogers*, where the Sixth Circuit held that somewhat minimal daily functions are not

11

comparable to typical work activities.[6] *Rogers,* 486 F.3d at 248. In *Rogers*, the ALJ

mischaracterized the testimony regarding the scope of daily activities and failed to consider

the physical effects of performance or assistance the plaintiff received for many activities,

including personal care from plaintiff's children who lived nearby. *Id.* at 248-49. In the

instant matter, Manley consistently qualified her abilities as dependent on pain, particularly

concerning household chores and driving. While Manley can drive sometimes, the ALJ did

not consider that "it depends on the pain" and that at times she cannot use the car's peddles.

(Tr. 111.) Likewise, "when able" she does dishes, dusting or folds laundry, but "it depends on

the pain" and at times she cannot perform household tasks at all. (Tr. 111.) *See Waltson v.*

*Gardner,* 381 F.2d 580, 586 (6th Cir. 1967) (performing simple functions does not necessarily

indicate that intermittent and not continuos activity is done in spite of pain). Furthermore,

unlike the ALJ's decision, Manley accounted for assistance. Manley said that her daughter

takes care of her (Manley) and helps her to dress and wash and that her boyfriend is primarily

responsible for caring for their children and animals. (Tr. 119, 110.)

### b. Location, Duration and Intensity of Pain

The record is replete with complaints of severe and chronic pain. As early as 1999,

Manley felt discomfort in all physical positions. (Tr. 145.) The pain progressively worsened

to a point where it was difficult for Manley to sit for long periods of time and doing so

elevated her discomfort. (Tr. 190.) In 2002, Dr. Witner reported Manley as a patient with

---

[6] Typical or basic work activities refer to "the abilities and aptitudes necessary to do most jobs," including among other things "walking, standing, sitting, lifting, pushing, pulling, reaching carrying, or handling." 20 C.F.R. § 404. 1521(b).

severe back pain who had been seeing urgent care physicians for several months and noted the

prescribed Norflex and Skelaxin were providing no relief for the severe pain that was still

radiating down into her legs.  (Tr. 190.)  Dr. Sailors attempted to move up the date of her

surgery due to the severe pain Manley was experiencing.  (Tr. 188.)  Even following surgery,

in 2003, at times, Manley stayed in bed because she could not go down the stairs.  Also,  her

eight year old daughter had to take care of Manley and help her to dress.  Sometimes Manley's

daughter stayed with her grandmother because of Manley's pain and, presumably, Manley's

inability to fully care for her daughter.  (Tr. 27.)

The ALJ mentioned that "the claimant has complained of continued pain" but followed

that statement with Manley "complained of pain for 4 days" in her most recent progress report.

(Tr. 27.)  This is not a proper consideration of the duration or frequency of Manley's pain

which occurred prior to, and persistently since, her 2001 application.

### c. Precipitating and Aggravating Factors

Manley consistently reported that both activity and the weather can aggravate her

condition and limit her mobility.  She reported, ". . . if the weather is decent, my mobility is

better.  If it's real humid or real cold or rain [sic], I can do less."  (Tr. 287, 127.)  In 2005

Manley testified: "I can't guarantee I can get up and get dressed every day.  I do try.  It all

depends.  If the previous day was a good day I might have done an extra amount of walking or

something.  The next day, my mobility might be limited."  (Tr. 313.)  Dr. Witmer noted that

during that her employment as a teller at Key Bank, Manley needed to either sit or stand for

long periods of time which seemed to aggravate her discomfort.  (Tr. 190.)  Accordingly,

Manley stated in her 2006 testimony that she was sore after a few hours of part-time

13

employment.  (Tr. 314.)

The ALJ made no mention of these precipitating and aggravating factors despite Manley's consistent reporting of such qualifications on her Agency paperwork and throughout her hearing.

### d. The type, dosage, effectiveness, and side-effects of any medications you take or have taken to alleviate your pain or other symptoms

While the ALJ recounted much of the medical evidence, a mere reference to the exhibit numbers containing a partial list of medications is not an adequate review of the fourth factor.  Manley testified, "I've tried medicine after medicine after medicine."  (Tr. 288.)  The record contains references to pain medications used to treat moderate to severe pain symptoms including Toradol, Skelaxin, Relafen, Ultram, Celebrex, Darvocet, Darvon, Ultracet, Nuerontin and Vicodin.  (Tr. 281, 288.)  The ALJ's failure to consider several potent opiod analgesics, muscle relaxants and also anti-depressants confirms that he did not review or properly rely upon the record as a whole.

### f. Treatment, other than medication, you receive or have received for relief of your pain

Most of the treatments Manley's doctors prescribed involved various pain medications, but she also tried physical therapy and exercise at the recommendation of her doctor.  (Tr. 23, 137, 143.)  Dr. Sailors' medical report also documents that Manley was given injections at the trigger point area to alleviate discomfort and leg cramping.  (Tr. 188.)  The ALJ mentioned physical therapy in his recitation of the medical testimony, but failed to consider it in his analysis and made no mention of the trigger point injections.

14

### g. *Any measures you have used to relieve your pain*

To relieve pain, Manley attempted sleeping in a chair and arranging her schedule to allow for time in between activities. (Tr. 145.) Manley consistently testified taking breaks between household chores and recently between tasks at her part-time job to mitigate her pain. (Tr. 145.) These breaks are consistent with Dr. Sailors recommendation that she "slowly increase activity as tolerated." (Tr. 145.) The ALJ made no mention of these attempts to relieve her pain.

### 2. <u>The ALJ's Credibility Analysis is Insufficient and, at Times, Not Logical</u>

While the Court does not require a perfect opinion, it does request a logically consistent one. *See* *Sarchet v. Chater*, 78 F. 3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). The ALJ's conclusions are not entirely bare, however, his explanations lack support, and, at times, relevance and sound reasoning.

Manley's credibility should not be discredited solely based upon the ALJ's assumptions. Despite Manley's indication that her family did most of the chores around the house, the ALJ determined that because she failed to indicate whether her husband or daughters did the specific tasks of cooking, cleaning or shopping, her references were too vague to be credible. (Tr. 26.) The only questions asked of Manley during the 2005 examination were the ages of her children and whether they help around the house; the follow-up to her "yes" response was, "As much as kids do?" (Tr. 290.) Manley should not be penalized for her sufficient affirmative responses to broad questions. Additionally, the

15

specific delegation of chores to parties other than Manley is irrelevant, as is the assertion that Manley's allegations of total disability are less credible because the ALJ did not expect her to wear contact lenses around the house. (Tr. 27.) The ALJ never questioned Manley about her use of contact lenses and offered no justification for his speculative conclusion that her ability to or interest in wearing contact lenses somehow rendered her less likely to be disabled.

Furthermore, the ALJ states that, "If her boyfriend had been in the habit of performing the household chores, one would have anticipated that he would have made his own lunch at 4:15 a.m. as opposed to expecting his incapacitated girlfriend to get up at that hour and make his lunch." (Tr. 27.) A finding of disability requires an inability to engage in substantially gainful activity on a full time basis, not incapacitation. Further, the record shows Manley goes to bed between 9:00 and 11:00 p.m. and has trouble sleeping due to pain. (Tr. 258.) Perhaps the statement most lacking in logic, is the ALJ's assumption that Manley can perform more chores than alleged or her husband would not have married her. *See Sarchet,* 78 F.3d at 308 ("The ALJ makes several unfounded sociological speculations which bespeak a lack of imagination concerning the lives of many of the people who apply for social security benefits.").

## C. Weight Afforded Medical Evidence

The Agency promises claimants that ALJs "will evaluate every medical opinion [they] receive." 20 C.F.R. § 404.1527(d). Yet, it also recognizes that not all medical sources need be treated equally, classifying acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). A "nonexamining source" is "a physician,

16

psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." *Id*.; 20 C.F.R. § 404.1502.  A "nontreating source" (but examining source) has examined the claimant "but does not have, or did not have, an ongoing treatment relationship with" her.  Smith, 482 F.3d at 875.  A treating source, accorded the most deference by the Agency, has not only examined the claimant but also has an "ongoing treatment relationship" with her consistent with accepted medical practice.  *Id*.  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition."  *Id*.

When evaluating medical opinions, the Agency will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her.  *Smith*, 482 F.3d at 875; 20 C.F.R. § 404.1527(d)(1).  The Agency will give the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . ." *Smith*, 428 F.3d at 875; 20 C.F.R. § 404.1527(d)(2).  Evidence from nonexamining sources is also considered opinion evidence. 20 C.F.R. § 404.1527(f).

Treating physicians or psychologists opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record.  *Bogle v. Sullivan*, 998 F.2d

17

342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(1); SSR 96-2p.  When the treating

physician rule does not apply, the ALJ must continue to weigh the treating source's opinion

under the following factors: "the length of the treatment relationship and frequency of

examination, the nature and extent of the treatment relationship, supportability of the opinion,

consistency of the opinion with the record as a whole, and specialization of the treating

source" in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (*discussing*

20 C.F.R. § 404.1527(d)).

 The Agency is tasked to ". . . always give good reasons in our notice of determination

of decision for the weight we give [the claimant's] treating source's opinion." *Wilson*, 378

F.3d at 544 (*quoting* 20 C.F.R. § 404.1527(d)(2)).[7]  Even if the purpose of the reason-giving

requirement in 20 C.F.R. § 404.1527(d)(2) applies to the entire regulation, the Agency

requires ALJ's to give reasons for only treating sources. *Smith*, 482 F.3d at 876.

Additionally, the regulations mandate that "[u]nless the treating physician's opinion is given

controlling weight, the administrative law judge must explain in the decision the weight given

to the opinions of a State agency medical or psychological consultant or other program

physician or psychologist as the administrative law judge must do for any opinions from

treating sources, nontreating sources, and other nonexamining sources who do work for us."

---

 [7]  This requirement ensures "the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *See Wilson*, 378 F.3d at 544.  In addition, the reason-giving requirement "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed his disabled and therefore might be especially bewildered when told by an administrative bureaucracy to that he [sic] is not, unless some reason for the agency decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)).

20 C.F.R. § 404.1527(f)(2)(ii).

The regulations further require ALJs to weigh nontreating medical source opinions under the same factors applicable to treating medical sources, including: (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, consistency of the opinion with the record as a whole and (4) specialization.  *See Davenport v. Astrue*, No. 3:06CV402, 2008 WL 641131 at *6 (S.D.Ohio Mar. 4, 2008); *Kester v. Astrue*, No. 3:07cv00423, 2009 WL 275438 at *10 (S.D.Ohio Feb. 3, 2009).  The Regulations appear to emphasize this requirement by reiterating it no less than three times.  *See* 20 C.F.R. § 404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion..."); *see also* 20 C.F.R. § 404.1527(f)(ii) (factors apply to opinions of state agency consultants);  20 C.F.R. § 404.1527(f)(iii) (same as to medical experts' opinions); SSR 96-6p.

### 1.  The ALJ Improperly Discredited Dr. Halas' Opinion Without Conducting the Requisite Factor Analysis

Manley alleges that the same factors the ALJ improperly applied to discredit her credibility were the bases for according Dr. Halas' opinions diminished weight.  *See* ECF No. 8 at 9.  Respondent contends that the ALJ reasonably found Dr. Halas' opinion was not well-supported, and therefore, not entitled to significant weight.  *See* ECF No. 10 at 9-10.  The Respondent maintains that Dr. Halas' opinion that Manley had marked limitations in her ability for attention, concentration, persistence and pace is inconsistent with Manley's activities and that Dr. Halas' own clinical findings fail to support his extreme opinion.  *See* ECF No. 10 at 9-10. Furthermore, the Commissioner alleges that to the extent Manley had credible work-related limitations resulting from her impairments, the ALJ reasonably

19

accommodated them.  *See* ECF No. 10 at 8.

In his written decision the ALJ claims that he "considered Section 404.1527 of the

Social Security Administration Regulations No. 4 in evaluating the physician's conclusions

and finds that such conclusions are not fully supported by the evidence in the record."  (Tr.

25.)  This statement by itself is not error, it indicates that the ALJ's evaluation began correctly

and confirms that he was knowledgeable of the correct legal criteria.  *Davenport,* 2008 WL

641131 at *6.  Judicial review, however, does not stop at the ALJ's conclusory reference to

the requirements of these Regulations.  The ALJ's decision must be studied to determine

whether he conducted a proper evaluation and whether he actually applied the correct legal

criteria required by the regulations.  *See Davenport,* 2008 WL 641131 at *6.  Although the

ALJ should be credited for describing the medical records in some detail, the ALJ's opinion

"that the record supports mild restriction of activities of daily living; moderate difficulties in

maintaining social functioning; moderate difficulties in maintaining concentration,

persistence, and pace; and no repeated episodes of decompensation each of extended duration"

is not supported by substantial evidence.  (Tr. 25.)  While an ALJ is free to reject an opinion,

there must be some valid reason to do so, such as a reason to question the diagnostic

technique.  *See Kester,* 2009 WL 27538 at *9.  In the instant matter, the ALJ provided no valid

reason for rejecting Dr. Halas' opinion.

The length of the treatment relationship and frequency of examination are not likely to

classify Dr. Halas as Manley's treating physician, although he did examine her twice.  Dr.

Halas, a clinical psychologist, provided a clinical interview and mental status examination of

Manley on August 15, 2003.  (Tr. 198.)  On December 9, 2005, Manley was referred back to

Dr. Halas for an individual psychological evaluation in order to determine her current intellectual and adaptive behavior levels in order to facilitate a determination of long term disability. Dr. Halas conducted a clinical interview, mental status examination, Minnesota Multiphasic Personality Inventory, assessment form and report. (Tr. 258.) Accordingly, the nature and extent of Dr. Halas' treating relationship with Manley and his specialization weigh in favor of crediting his opinion.

The ALJ justified the diminished weight allotted to Dr. Halas' opinion with the third factor used to weigh nontreating medical source opinions; the supportability of the opinion and consistency of the opinion with the record as a whole. The inconsistencies the ALJ pointed out between the Dr. Halas' reports and the record as a whole are riddled with the same mischaracterizations of evidence and unfounded sociological speculations that were improperly applied to the Manley's credibility determination. The ALJ's illogical and unsupported conclusions carry no additional weight here.

The ALJ opined that Dr. Halas' report is inconsistent because it reported marked and moderate limitations in Manley's attention and because she was reading Harry Potter in the waiting room. (Tr. 24.) This is another attempt by the ALJ to manipulate the record. *See Kester*, 2009 WL 29538 at *9 (stating that an ALJ cannot 'pick and choose' only the evidence that supports his position). The ALJ is not qualified to re-interpret Dr. Halas' clinical findings, nor are clinical findings required.[8] In fact, Dr. Halas' reports span more than two

---

[8] The Sixth Circuit Court of Appeals has rejected the need for objective medical evidence to support a claimed mental impairment. *Kester v. Astrue*, No. 3:07cv00423, 2009 WL 275438, at *9 (S.D.Ohio Feb. 3, 2009) ("... mental disorders cannot be ascertained and verified as are most physical illnesses. . . . The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial

21

years and show a remarkable level of internal consistency.  At both examinations, more than

two years apart, Manley's global assessment of functioning ("GAF") score was a 45.[9]  (Tr.

262.)  Dr. Halas noted Manley had few friends and was unemployable due to her physical

problems.  (Tr. 258.)  Dr. Halas found Manley had marked limitations in concentration,

attention, persistence and pace in 2003; more than more than two years later, Dr. Halas

reported the same marked limitations in Manley's attention and concentration.  (Tr. 198.)  The

ALJ was incorrect in relying on nonexamining sources to reach a different conclusion.

Further, that Manley's medical records demonstrate that she was cooperative and has a

tendency to de-emphasize her psychological problems makes it even less likely that Dr. Halas'

conclusions were extreme.  (Tr. 198, 258.)  *Cf. Covucci v. Apfel*, No. 00-4058, 2002 WL

511559, at *3 (6th Cir. Apr. 3, 2002) (*finding* the claimant's "tendency to emphasize and

possibly exaggerate psychological problems . . . detracted from [the doctor's] conclusion that

[claimant's] psychological problems were very serious.").

---

documentation, unless there are other reasons to question the diagnostic techniques.").

[9]  The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR), (4th ed., text rev., 2000), pp.32, 34.  The GAF score is taken from the GAF scale, which rates individual's "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32.  The GAF scale ranges from 100 to 1.  *Id*. at 34.  At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id*.  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "persistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."  *Id*.  Here, the assigned GAF score of 45 lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id*.

## 2.  Application of Regulatory Factors to NonExamining Sources

Manley questions the ALJ's reliance on assessments provided by two nonexamining sources, psychologist Donna Winter and the testimony of Dr. Frank Plotkin, who specializes in internal medicine and testified as a Medical Expert.  *See* ECF No. 8 at 10.  Manley alleges that Dr. Winter's nonexamining opinion was not supported by the evidence and that Dr. Plotkin referred solely to Dr. Winter's assessment from 2003.  *See* ECF No. 8 at 11.  There is no indication in the ALJ's written decision that he applied the regulatory factors in crediting the opinions of nonexamining sources Dr. Winter and Dr. Plotkin.  *See Kester*, 2009 WL 29538 at *9.  Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these other sources or otherwise ensure that the discussion allows a claimant or subsequent review to track the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.  *Harthun v. Comm'r of Soc. Sec.*, No. 1:07-cv-595, 2008 WL 2831808 (W.D.Mich. July 21, 2008).

Dr. Plotkin is not an expert in psychological evaluations, but specializes in internal medicine and cardiology.  (Tr. 241.)  Further, he relied primarily on the summary from psychologist Donna Winter, a nonexamining source who last evaluated Manley in 2003.  (Tr. 302, 304.)  Although a nonexamining medical advisor's opinion can be substantial evidence the ALJ may consider, he is not bound by the opinion of a nonexamining physician.  20 C.F.R. § 404.1527(f)(2)(I).  Dr. Winter's opinion clearly contrasts with Dr. Halas'.  The ALJ provided no explanation for why Dr. Plotkin's opinion is credited, let alone a valid reason for giving it more weight than the psychologist (Dr. Halas) who examined Manley both before

23

and after Dr. Winter.  The ALJ has committed error because the opinions of Dr. Plotkin and

Dr. Winter do not fairly represent the entire record and the ALJ failed to consider the factors

used to weigh nontreating medical opinions.  While the standards of review are deferential to

the Agency, it is essential that all determinations be made upon the record in its entirety and in

accordance with the Agency's own regulations.  *Rogers*, 486 F.3d at 242.

### D.  Harmless Error Analysis

The Sixth Circuit has found that the harmless-error rule applies in the Social Security

context.  *Masters v. Astrue,* No. 07-123-JBC, 2008 WL 4082965, at *3 (E.D. Ky. Aug. 29,

2008), (*citing Heston*, 245 F.3d at 535) ("failure to explain weight given to treating physician

is not reversible error where ALJ's opinion is nonetheless supported by substantial evidence

and error was harmless"); *cf. Wilson,* 378 F.3d at 546 ("a procedural error is not made

harmless simply because [the aggrieved party] appears to have had little chance of success on

the merits anyway.").  Nonetheless, courts apply a harmless error analysis cautiously, taking

care to avoid rewriting an ALJ's decision *post hoc* even when substantial evidence exists to

support the ALJ's decision.

While a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's

finding where the deficiency [has] no practical effect on the outcome of the case,"

inaccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a basis for

remand.  *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).  An ALJ can consider all the

evidence without directly addressing in his written decision every piece of evidence submitted

by a party, but his factual findings as a whole must show that he implicitly resolved such

conflicts.  *See Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 2006 WL 305648, at *10 (6th

Cir. Feb. 9, 2006) *(citing Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999))).

In the instant matter, the ALJ's errors were not harmless.  Even if the ALJ carefully considered the entire record in contemplating his decision and asked probative questions at the hearing, his written decision failed to articulate that careful consideration and the answers to the hearing questions.  In sum, the ALJ's opinions do not represent the entire record.  Specifically, the ALJ's findings with regard to the Manley's subjective complaints of pain were conclusory and relied on speculation rather than the record to, ultimately, find Manley's symptoms of pain not entirely credible  And, the record does not support the ALJ's conclusion that Dr. Halas' opinion was "so patently deficient" that it could not have been credited.  *Wilson*, 378 F.3d at 547.

These errors are not harmless, as a correction of the errors would require the Court to rewrite the ALJ's decision, and it is generally held that a federal court is not to rewrite an ALJ decision *post hoc* even when it can find substantial evidence in the record to uphold the decision.  It is worth noting that even if the ALJ's improper weighing of the medical evidence were harmless error, his deficient credibility analysis would still necessitate a remand.

### IV.  Conclusion

The ALJ's opinion is deficient as it lacks the proper application of relevant legal standards and is not supported by substantial evidence.  Specifically, and as described more fully above, the ALJ's assessment of Manley's credibility regarding her complaints and limitations and the weight afforded the medical opinions regarding her mental health were not reached in accordance with proper legal standards and supported by substantial evidence.

Additionally, because the ALJ's assessment of Manley's residual functional capacity is driven by consideration of all of the relevant medical and other evidence, including her credibility and the weight afforded medical opinions, the ALJ's assessment of Manley's residual functional capacity and its role in his concluding that she could return to past relevant work or perform other jobs in the national economy are flawed and must be revisited.  *See* 20 C.F.R. § 404.1545(a)(3).

### V.  Recommendation

The Court recommends that the final Agency decision denying Manley benefits be reversed and that the case be remanded, pursuant to the Fourth Sentence of 42 U.S.C. § 405(g), with instructions that, upon remand, the ALJ: (1) reconsider Manley's credibility with a proper analysis, including the seven factors for evaluating subjective complaints, (2) re-evaluate the weight given to medical evidence according to the four factors prescribed for weighing nontreating medical source opinions, and (3) conduct a reassessment of Manley's residual functional capacity, before determining whether Manley is disabled and eligible for Disability Insurance Benefits.


          __*s/ Benita Y. Pearson*_____

Dated: July 24, 2009          United States Magistrate Judge


### OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).